COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 D.F.
  
                              Appellant,
  
 v.
  
 TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,
  
                              Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
  § 
  
 
 
  
 No. 08-12-00068-CV
  
 Appeal from the
  
 65th
 Judicial District Court 
  
 of El
 Paso County, Texas 
  
 (TC#2010CM6140) 
  
 
 


 

O
P I N I O N

            D.F. [1]
(“D.F.” or “Appellant”) appeals the termination of her parental rights as to
K.J.F., a minor child.[2]  D.F. brings three issues:  (1) the trial court erred in not requiring
evidence of abuse or neglect as an implied element of the termination grounds
under Texas Family Code Section 161.001(1)(O); (2) the evidence was legally
insufficient to support the termination on best interest grounds where D.F. had
completed a significant portion of the court-ordered service plan; and (3) the
evidence was factually insufficient to support termination of parental rights
on best interest grounds relating to several factors.  We affirm. 

BACKGROUND

D.F. is the biological mother of K.J.F., a
minor child born on April 8, 2009, and H.S.F., a minor child not a subject of
this suit.  D.F. previously resided in
California with K.J.F. and H.S.F.  She
also lived with her domestic partner T.W., and T.W.’s two children.  During the several years they lived with
their children, D.F. and T.W. did not have a stable lifestyle and moved
frequently.  In June of 2010, after Child
Protective Services in California became involved with the children, T.W.’s
mother, S.B, went to California and brought all four children to El Paso to
live with her.  D.F. and T.W. had asked
S.B. to take care of the children because of their unstable situation in California.  D.F., who was homeless and unemployed,
remained in California with T.W. when the children came to El Paso with S.B.

In July of 2010, S.B. had a heart attack and
placed the four children, including K.J.F., in the Child Crisis Center of El
Paso (“Child Crisis Center”).  When the Texas
Department of Family and Protective Services (“Department”) became involved, it
contacted S.B. to determine whether she would take the children back into her
care.  Ultimately, the Department removed
the children from the Child Crisis Center. 
At the time they were removed, all of the children were in need of
medical attention.

Additional family history details are found
in an affidavit, attached to the original petition.  According to the affidavit, prepared and
signed by a Department investigator, the Department received a report on August
6, 2010, alleging neglectful supervision of K.J.F. and H.S.F. by D.F.  The report indicated that:  (1) the children were in El Paso with
caretakers who were no longer able to care for them; (2) D.F. was homeless in
California and had not had contact with her children; (3) when K.J.F. arrived
at the Child Crisis Center, there were what appeared to be healing blisters on
the bottom of K.J.F.’s feet, which were in different stages of healing although
the Child Crisis Center staff noted that the blisters were much worse when K.J.F.
was first admitted to the facility; (4) K.J.F. had previously been sick with an
infection in both ears and an upper respiratory infection but was doing well;
(5) S.B. had incurred several thousand dollars in medical expenses for the
children because D.F. and T.W. did not have insurance to cover K.J.F.’s medical
costs; and (6) S.B. was asked to pick up the children from California by T.W. before
Child Protective Services in California “took them away from her.”  The affidavit indicates that S.B. initially
felt that she and her husband could care for the children.  However on August 24, 2010, S.B. determined
that they would not be able to do so because of financial hardships.  They did not agree to release the children
from the Child Crisis Center.  That same
day, the Department investigator spoke to D.F., who indicated that she wanted
to reunify with her children at the Rescue Mission in San Diego, California.  D.F. indicated that she was going to be able
to stay with her children in a long-term program at that facility and that
while D.F. was not employed at the time, she was seeking work.

            On August 30, 2010, the Department
investigator learned that there was actually a two-month waiting list for
admission to the long-term program in California and that the only program then
available to D.F required her and the children to be out of the facility during
daytime hours.  The following day the
Child Crisis Center advised the Department that:  (1) the children would need to be discharged
from the facility as the children had medical needs and no insurance; and (2)
neither D.F., S.B., or S.B.’s husband were returning the Child Crisis Center’s
calls, nor were they checking in with the children as had been requested.  The Department was advised later that day
that neither D.F. nor T.W. were returning calls made to them by the Rescue
Mission nor did they show any concern or urgency in reunifying with their
children.

On September 1, 2010, the Department filed
its Original Petition for Protection of a Child, for Conservatorship, and for
Termination in Suit Affecting the Parent-Child Relationship.  The court entered an Order for Protection of
a Child in an Emergency[3]
that same day pursuant to Family Code section 262.102.  That order named the Department as K.J.F.’s
temporary managing conservator and included a finding of “an immediate danger
to the physical health or safety of [K.J.F.] or [that K.J.F. has] been the
victim[] of neglect or sexual abuse and that continuation in the home would be
contrary to [K.J.F.]’s welfare.”

The trial court conducted a full adversary
hearing under Chapter 262 of the Texas Family Code on September 14, 2010 and subsequently
entered temporary orders for the care and custody of K.J.F.  The Temporary Order Issued After Show Cause
Hearing required D.F. to “comply with each requirement set out in the
Department’s original, or any amended, service plan during the pendency of this
suit.”  A section of the order, redacted
for admission at trial, indicated that “there is sufficient evidence to satisfy
a person of ordinary prudence and caution that: 
[A]llowing the children to remain in the home would be contrary to the
children’s welfare.”  Furthermore, in the
“Finding and Notice” section of the order which precedes the “Compliance with
Service Plan” section (also redacted at trial), the Temporary Order states:

The
court finds and hereby notifies the parents that each of the actions required
of them below are necessary to obtain the return of the children, and failure
to fully comply with these orders may result in the restriction or termination
of parental rights.

 

            Department case worker
Tanya Berry’s (“Ms. Berry”) first contact with D.F. was via telephone in
September of 2010.  D.F.’s initial
plan was to remain in California.  As a result, the Department prepared a Family
Service Plan (“Service Plan”) pursuant to Section 262.103 of the Family Code
and filed it with the court on October 26, 2010.  The record indicates that a Service Plan
meeting took place over the phone on October 23, 2010, that D.F. had no plans
to come to El Paso, and that a copy of the Service Plan would be mailed to
her.  Following a status hearing on
October 28, 2010, the court issued a Status Hearing Order which approved the
Service Plan and made it an order of the court. 
D.F. was ordered to take certain actions to either implement or comply
with the Service Plan, including:  (1)
refraining from using any illegal substances or alcohol; (2) refraining from
associating with individuals that used illegal substances or alcohol; (3)
maintaining phone contact with K.J.F. at least twice a week; (4) obtaining and
maintaining appropriate housing and providing proof of same to the Department
case worker; (5) maintaining regular and consistent contact with the case
worker by telephone no less than once per week; and (6) following any and all
family service plans.  The “Parent(s)
Acknowledgement” section of the Service Plan indicated that D.F. was then in
San Diego.  D.F. did not appear for the status
hearing or sign the order, however her appointed counsel did sign the order.  Provisions similar or identical to those
contained in the Status Hearing Order appear in the Service Plan.

D.F. and T.W.
moved to El Paso in December of 2010, and D.F. met with Ms. Berry formally
during that month at that meeting.  At
that meeting, Ms. Berry reviewed the Service Plan with D.F., who understood
that the top priority was obtaining housing and employment.  D.F. was initially living at the Rescue
Mission and, approximately ninety days later, moved to the Opportunity
Center.  An amended Service Plan containing substantially identical terms was
created when D.F. arrived in El Paso, with the only difference being that
D.F. was to perform the Service Plan tasks in El Paso.

            Ms.
Berry advised D.F. that she needed to remain in contact with Ms. Berry.  According to Ms. Berry, D.F. initially did
very well, visiting K.J.F. weekly, at which time Ms. Berry met with D.F.  In mid-July 2011, D.F. began having unsupervised
visits with K.J.F.  These visits were
scheduled at the same time as the visits between T.W. and her children.  On her own accord, D.F. completed parenting
classes and provided certification of her completion of the classes to the
Department.  D.F. also completed the
psychological evaluation required by the Service Plan and Status Hearing Order.

            The
Department’s initial permanency plan was reunification.  However, around August of 2011, D.F. and T.W.
separated.  T.W. had been living with
S.B. but D.F. was not allowed to stay with T.W. at S.B.’s home.  During an unsupervised visitation, D.F.
assaulted T.W. in front of the children, after which D.F.’s visits with K.J.F. reverted
to supervised visitation.

            Towards
the end of October 2011, D.F.’s participation in the Service Plan went
“completely south” and her visits with K.J.F. became less frequent.  D.F. told Ms. Berry that the break-up with
T.W. “set her on a downward-spiral mentally,” and said that her attorney had
advised her to stop having contact with K.J.F., because D.F. was “not mentally
sound at that time.”  D.F. obtained
services from El Paso Mental Health and Mental Retardation (“MHMR”) where D.F.
was diagnosed with depression and placed on medication.  The court appointed a guardian ad litem for D.F. on November 22, 2011.

            D.F.
had difficulty complying with the Status Hearing Order and the Service Plan.  D.F. submitted to a random drug test but
admitted to Ms. Berry that she used marijuana on a few occasions in violation
of the order and Service Plan.  D.F.
never completed a drug and alcohol assessment. 
D.F. failed to maintain the required phone contacts with K.J.F. and the
Department.  D.F. never obtained or
maintained appropriate housing for either herself or K.J.F., and Ms. Berry
testified that D.F. “never demonstrated” that she was “able to provide a stable
environment” for K.J.F.

            During
most of the pendency of the case D.F. lived “off and on” at the Opportunity
Center, while occasionally staying at friend’s houses.  D.F. was given information regarding Section
8 housing, but felt that she and T.W. would not qualify based on having two
households and a prior eviction in Missouri. 
D.F. and T.W. once told Ms. Berry that they were going to get an
apartment but never provided any supporting documentation.  D.F. also told Ms. Berry that she planned on
using her federal tax refund to secure an apartment and pay four months’ rent
in advance, but never followed through with her plan.  D.F. never gave a clear response as to how
the tax refund money was spent, telling Ms. Berry only that she and T.W. had a
“nice birthday party” for one of T.W.’s children and the money was spent on the
children.  D.F. claimed to have been
working at Albertson’s Supermarket and as a caterer, but never provided
documentation to the Department regarding these jobs.

            Between
October and December of 2011, Ms. Berry walked to the El Paso County Courthouse
approximately once a week.  Ms. Berry
testified she saw D.F. in a plaza near the courthouse “almost daily,” and D.F.
appeared to be “having a good time,” socializing with a group of people that
appeared to be homeless.  Mr. Berry saw
D.F. socializing with this group from about nine in the morning until six in
the evening and testified that the group’s members moved back and forth between
the plaza and a nearby bar.  Ms. Berry testified
that on a few occasions D.F. appeared to be intoxicated.  On one occasion, Ms. Berry approached D.F.
and asked if she was going to return to complete her services. D.F. responded
“[Y]es, I’m coming back. I’m dealing with some issues,” but D.F. did not seem engaged
and did not ask about K.J.F or ask to visit K.J.F.  Subsequently, D.F. did not contact Ms. Berry
or inquire about K.J.F.

In November of
2011, D.F. informed Ms. Berry that she had been living behind the county courthouse
because she had been banned from the Opportunity Center.  When Ms. Berry checked with the Opportunity Center,
she was advised that D.F. was not banned. 
Ms. Berry arranged for D.F. to be seen at Aliviane, based on her
admitted drug use, but D.F. failed to make an appointment with the staff at
Aliviane.

The last time Ms.
Berry saw D.F. was on January 13, 2012. 
At that time, D.F. had not contacted the Department or made any effort
to visit K.J.F. for nearly a month and a half. 
D.F. then sought to resume her visits with K.J.F., having missed “quite
a few visits prior to then.”  D.F. had
visits with K.J.F. on January 6 and January 13, had good interactions with
K.J.F. during the visits, and told Ms. Berry that she was feeling “much
better.”  Following these visits, D.F.
missed the last two scheduled visits before the trial and did not initiate contact
with Ms. Berry again.

On January 30, 2012, a termination trial was
held.[4]  D.F. did not appear at the trial.[5]  The only witness called at trial was Ms.
Berry.  Ms. Berry testified that
termination of D.F.’s parental rights was in the best interests of K.J.F.
because K.J.F. was two years old, had been “bounced around from being homeless
in California, to coming to El Paso to going to the Child Crisis Center,” and
had “had a lot of inconsistencies in her life for being so young.”  Ms. Berry also testified about D.F.’s “lack
of urgency” in wanting to get K.J.F. back and the numerous missed visits.

At the time of the
trial, K.J.F. was living with a foster family who was interested in adopting
her.  According to Ms. Berry, K.J.F. had
no medical or educational issues and appeared very bright and healthy with a
very stable life in foster care, to which she had adjusted well.  Ms. Berry testified that the
Department’s permanency goal was relative adoption, with a concurrent goal of
adoption by K.J.F.’s foster parents.  A
home study was performed on D.F.’s mother but the results were unsatisfactory.  The Department made attempts to contact
D.F.’s sister to potentially initiate a home study, but the sister did not
respond to the Department’s inquiries. 
D.F. asked whether K.J.F. could be placed with S.B. and T.W.’s children,
however Ms. Berry explained that the Department wished to initially look at
blood relatives.  She further explained that
the Department was unsure if S.B. would pass a home study, and therefore was
unable to guarantee S.B. as a placement.[6]  Ms. Berry did advise that there was a
possibility that K.J.F. could be placed with T.W.’s children.

Following the trial, the trial court found
clear and convincing evidence to support a finding under Texas Family
Code Section 161.001(1)(O).  The trial
court also found that termination of
D.F.’s parental rights was in K.J.F.’s best interest and appointed the
Department as sole managing conservator.  D.F. timely appealed.

DISCUSSION

D.F.’s first
argument is that the trial court erred in failing to require, as an element of
an “O” ground for termination, that there be evidence of abuse or neglect by a
party in connection with the removal of the child, as this finding is an
implied element under the Texas Family Code. 
D.F. argues that there was no evidence of “abuse or neglect” at either
the initiation of the case or during the pendency of the case, although she
acknowledged that while there may be “some evidence,” it falls below the
quantum of proof required.

Pursuant to the
Texas Family Code:

The court may order termination of the parent-child
relationship if the court finds by clear and convincing evidence:

 

.               .               .

 

(O)
failed to comply with the provisions of a court order that specifically
established the actions necessary for the parent to obtain the return of the
child who has been in the permanent or temporary managing conservatorship of
the Department of Family and Protective Services for not less than nine months
as a result of the child's removal from the parent under Chapter 262 for the
abuse or neglect of the child . . . .

 

Tex.Fam.Code
Ann. § 161.001(O)(West Supp. 2012).

            D.F.
argues that because neither the Texas Supreme Court nor this Court has ever directly
addressed this issue it constitutes an unsettled area of law.  Accordingly, D.F. argues that because the
trial court did not have discretion to evaluate whether this was an implied
term of the statute, the law requires a de
novo review by this Court, citing Bragg
v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002) in support of her
argument.

            The
Department agrees that neither this Court nor the Supreme Court has previously
addressed the issue.  However, in its
brief, the Department argues that a plain reading of the statute supports the
interpretation that the removal of a child for abuse or neglect is a required
element of Section 161.001(1)(O) of the Texas Family Code.

            We
agree that a child’s removal for “abuse or neglect” is a required element of Section
161.001(1)(O) and join a majority of other courts of appeal which have so held.[7]  As a result, we must now determine whether
the evidence is sufficient to support K.J.F.’s removal because of abuse or
neglect.  See In re S.N., 287 S.W.3d 183, 190 (Tex.App.--Houston [14th Dist.]
2009, no pet.).

Abuse or neglect

            D.F.
argues that K.J.F. was not removed as a result of abuse or neglect at the hands
of D.F. or her partner, T.W.  As a
result, the Department did not meet its burden because it failed to completely
establish ground “O.”[8]  D.F. contends that the Department failed to
prove or address whether the removal was for abuse or neglect, and that there
was no evidence presented that D.F. was either abusive or neglectful towards
K.J.F. in the circumstances leading up to K.J.F.’s removal.  D.F. contends that there is no evidence supporting
a finding of ground (O) because there is no evidence of abuse or neglect.

No-evidence allegations
are reviewed under a legal sufficiency standard.  See In
re J.F.C., 96 S.W.3d 256, 264-66 (Tex. 2002).  In reviewing the legal sufficiency of the
evidence to support a termination finding, we look at all of the evidence in the
light most favorable to the termination finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction about
the truth of the matter on which the Department bears the burden of proof.  M.C. v.
Texas Dept. of Family and Protective Services, 300 S.W.3d 305, 308
(Tex.App.--El Paso 2009, pet. denied), citing
In re J.L., 163 S.W.3d 79, 84-85 (Tex. 2005); In re J.F.C., 96 S.W.3d at 265-66.  We assume the fact finder resolved any
disputed facts in favor of its finding, if a reasonable fact finder could so
do, and disregard all evidence that a reasonable fact finder could have
disbelieved or found incredible.  M.C., 300 S.W.3d at 308.  We do not, however, disregard undisputed
evidence that does not support the finding. 
Id.

In a factual
sufficiency review we must give “due consideration” to any evidence the fact
finder could reasonably have found to be clear and convincing.  Id.  We must consider the disputed evidence and
determine whether a reasonable fact finder could have resolved that evidence in
favor of the finding.  Id.  If the disputed evidence is so significant
that a fact finder could not have reasonably formed a firm belief or
conviction, then the evidence is factually insufficient.  Id.

In either case,
before parental rights can be terminated involuntarily, the trier of fact must
find by clear and convincing evidence that:  (1) the parent committed one of the statutory
grounds found in Section 161.001(1); and (2) termination is in the best
interest of the child.  Id. at 308-09; In re A.B., 269 S.W.3d 120, 126 (Tex.App.--El Paso 2008, no
pet.).  “Clear and convincing evidence”
means the measure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.  Tex.Fam.Code Ann. § 101.007 (West 2008).  This heightened burden of proof results in a
heightened standard of review.  In re S.N., 287 S.W.3d at 187.

            D.F.
argues that the Department did not establish that K.J.F. was removed for abuse
or neglect, either by D.F. or T.W.  D.F. initially
argues that K.J.F. was not “removed” from her care, but that D.F. voluntarily
made the decision to place K.J.F. and T.W.’s children with S.B.  Following her heart attack, S.B. placed the
children at the Child Crisis Center, and the Department removed the children
from the Child Crisis Center after S.B. indicated she was unable to care for
them.  D.F. contends that no evidence was
presented that D.F. was abusive or neglectful in the events that led to the
removal.  The Department asserts that
D.F.’s argument essentially requires that K.J.F. have been physically removed
from D.F.’s care and that the Texas Family Code has no such requirement.

Texas does not
apply such a restrictive interpretation to Section 161.001(1)(O).  Children are removed from their parents under
Chapter 262 for the abuse or neglect of a child where the children may have
been physically in the care of a relative, a medical or social services
institution, or the Department.  See, e.g. In re A.A.A., 265 S.W.3d 507,
516 (Tex.App.--Houston [1st Dist.] 2008, pet. denied)(holding that child in
care of a shelter at the time of removal was removed from the parent under
Chapter 262 for abuse or neglect).  At
the time of her removal, K.J.F. was residing at the Child Crisis Center.  While she was physically removed from that
facility, we find for purposes of Chapter 262, she was removed from her parent.
 See In re A.A.A., 265 S.W.3d at 516.

            D.F.
next asserts that there was no evidence establishing that she was abusive or
neglectful of K.J.F. in the events that led to the removal, and cites In re S.A.P., 169 S.W.3d 685 (Tex.App.--Waco
2005, no pet.) to support her position. 
We find In re S.A.P.
distinguishable from the instant case. 
In In re S.A.P., the
Department removed a child solely on the risk of abuse or neglect on the basis
that the parents had previously had their parental rights to other children
terminated.  In re S.A.P., 169 S.W.3d at 698. 
In holding that there was no evidence of removal for “abuse or neglect,”
the court noted that the case worker “unequivocally testified that S.A.P. was
not removed for abuse or neglect,” that S.A.P. was not abused or neglected by
his parents, and that S.A.P. was removed only because of the risk due to his
parents’ prior history.  Id. at 705-6.  Here, Ms. Berry testified that:  (1) K.J.F. never had a stable environment as
D.F. “moved around a lot” and did not have a stable residence after she left
Missouri where K.J.F. was born; (2) California Child Protective Services had
become involved with the family; (3) because of this involvement, D.F.
voluntarily placed K.J.F. with S.B. in El Paso; (4) a month later S.B. placed
K.J.F. at the Child Crisis Center because she could no longer care for the
children due to her health; (5) the Department became involved at the request
of the Child Crisis Center as K.J.F. was not retrieved by anyone after being
left at the Child Crisis Center; (6) the Department discovered that K.J.F.
needed medical attention; and (7) at the time of K.J.F.’s removal, D.F. was
homeless in California.

Whether a child is
removed for “abuse or neglect” is determined on a case-by-case basis.  In re A.A.A.,
265 S.W.3d at 515.  We note several
similarities between the instant case and In
re A.A.A.  In In re A.A.A., the court found that the Department had not
established neglect based on evidence that the parent left a child in a shelter
while the parent went to commit a crime. 
In re A.A.A., 265 S.W.3d at
515-16.  On the other hand, the court did
find that the child was removed for neglect, as the evidence showed that once
the parent was released from police custody she made no effort to find out the
child’s location or condition, or leave a way for either the Department or the
shelter to contact her.  Id. at 516.  The court found that the child had been
removed from the parent pursuant to Section 262.104 (which permits emergency
removal without a court order).  Id. 
The trial court also issued temporary orders naming the Department as
the child’s temporary sole managing conservator, finding, inter alia, that “’there is a continuing danger to the physical
health or safety of the child if returned to the parent.’”  Id.  Here, while the child was not removed pursuant
262.104, the undisputed evidence is that:  (1) while K.J.F. was at the shelter, D.F. made
no efforts to contact K.J.F., even though she had been asked to do so; (2) an
emergency hearing was held, following which the trial court entered an order
for protection of a child in an emergency which states that “there is an
immediate danger to the physical health or safety of the children or the
children have been the victims of neglect or sexual abuse and that continuation
in the home would be contrary to the children’s welfare;”[9]
and (3) the order named the Department as the temporary sole managing
conservator of K.J.F.

A reasonable trier
of fact could have formed a firm belief or conviction about the truth of the
matter on which the Department bore the burden of proof.  Specifically, that based on the evidence
presented, K.J.F. had been neglected by D.F. given D.F.’s unstable living
conditions in California and El Paso and the fact that D.F. left K.J.F. with
S.B., an individual who had significant health problems.  The evidence presented is legally and
factually sufficient to support the trial court’s finding that K.J.F. was
removed from D.F. under Chapter 262 for abuse or neglect.  Appellant’s first issue is overruled.

Awareness and completion of service plan 

            D.F.’s
second issue is that the evidence did not clearly demonstrate that D.F. was
specifically aware of the existence of the Service Plan and the admonition that
failing to complete all of the tasks assigned to her would result in the
termination of her parental rights.  D.F.
argues that the evidence was legally insufficient to support termination where
D.F. had completed a “significant portion” of the Service Plan.  D.F. was not present at the Chapter 262 hearing
and asserts that she did not meet with Ms. Berry until December of 2010 when
D.F. moved to El Paso.  D.F. also did not
sign any orders.  D.F. argues that as a
result, she was unaware of the terms of the Service Plan or its consequences.  Finally, D.F. argues that because she was not
specifically aware of the existence of the plan, she was unaware that failure
to complete the plan could result in termination of her parental rights.

            Texas
Family Code Section 263.103 discusses service plans and indicates that the
child’s parents and a Department representative shall discuss each term and
condition of the plan before it is signed.  See Tex.Fam.Code Ann. § 263.103(a-1)(West
Supp. 2012).  If the Department
determines that the parent is unable or unwilling to participate in the
development of the plan, the Department may file the plan without the signature
of the parent.  See Tex.Fam.Code Ann.
§ 263.103(c).  Section 263.103(c)
provides that the service plan takes effect when the Department “files the plan
without the parents’ signatures.”  Tex.Fam.Code Ann. § 263.103(c).  See
also In re T.T.F., 331 S.W.3d 461, 478 (Tex.App.--Fort Worth 2010, no
pet.)(noting same).

            We
first review D.F.’s contention that she was unaware of the Service Plan.  The Service Plan indicates that it was
prepared over the phone with D.F. on October 23, 2010, and was filed with the
court on October 26, 2010.  The plan
notes that the parents were not in the State of Texas and were unable to sign
the plan.  The Service Plan states that D.F.
was “currently in San Diego, California” and that the plan would be mailed to
her.  The Department acted within its authority
under the Texas Family Code to prepare and file the Service Plan.  See Tex.Fam.Code Ann. §§ 263.103(c)
and (d).  In addition, D.F. was aware of
the plan, as it was prepared with her via telephone.  D.F. also reviewed the Service Plan with Ms.
Berry when D.F. arrived in El Paso.  Pursuant
to statute, the Service Plan took effect on October 26, 2010.  Clearly, D.F. was aware of the requirements
of the plan, thus accomplishing the statutory requirement of Section 263.103(a-1).  D.F.’s contention that she was unaware of the
plan and its terms is not supported by the record.

            We
next turn to D.F.’s contention that her completion of “a significant portion”
of the services listed in the Service Plan was sufficient to challenge the
determination that she failed to complete all services under the plan.  D.F.
was ordered to take certain actions to either implement or comply with the
Service Plan, including that she:  (1)
refrain from using any illegal substances or alcohol; (2) refrain from
associating with individuals who used illegal substances or alcohol; (3)
maintain phone contact with K.J.F. at least twice a week; (4) obtain and
maintain appropriate housing and provide proof of same to the Department case
worker; (5) maintain regular and consistent contact with the case worker by
telephone no less than once a week; and (6) follow any and all family service
plans.

D.F. concedes that
she did not obtain housing or employment, both of which were required under the
terms of her Service Plan.  D.F. also
notes that it is undisputed that K.J.F. was in the custody of the Department
for well over nine months.  However, D.F.
argues that she completed a significant portion of the services required under
the plan, and that the evidence was legally insufficient to support the
termination on best interest grounds as a result.

In addition to the
failure to obtain housing or employment, D.F. admitted to Ms. Berry at a random
drug test that she used marijuana on a few occasions.  In addition, the evidence established that D.F.
never completed a drug and alcohol assessment as required by the Service Plan, that
she failed to maintain contact with K.J.F. at least twice a week, and that she
did not maintain regular and consistent contact with Ms. Berry at least once a
week.  Ms. Berry noted that D.F.
associated with a group of people who appeared to be homeless and who spent
most of the day in a plaza near the courthouse, making occasional trips to a
local bar, and that D.F. often appeared to be intoxicated.  This evidence supports the trial court’s
conclusion that D.F. failed to comply with the requirement of the Service Plan
that she refrain from associating with individuals who used illegal substances
or alcohol.  Ms. Berry did advise that
D.F. underwent random drug tests and did complete a psychological evaluation,
which were required under the Service Plan. 
D.F. was diagnosed with depression in January of 2011.  However the Department did not amend the plan
to include any requirements in relation to this diagnosis.

The evidence presented,
including her own admissions, established that D.F. was not in compliance with her
Service Plan.  She did not:  (1) secure employment; (2) demonstrate an
ability to provide a safe home; (3) refrain from drug use; (4) maintain contact
with K.J.F.; or (5) maintain contact with her caseworker.  In reviewing the evidence in the light most
favorable to the finding, we conclude a reasonable trier of fact could have
formed a firm belief or conviction that D.F. failed to comply with the
provisions of the court ordered Family Service Plan which specifically
established the steps necessary for D.F. to reunite with K.J.F. and that K.J.F.
had been in the temporary managing conservatorship of the Texas Department of
Family and Protective Services.  Tex.Fam.Code Ann. § 161.001(1)(O).  The evidence was legally sufficient to
establish the statutory predicate of omission under paragraph (O).  See In
re A.D., 203 S.W.3d 407, 413-14 (Tex.App.--El Paso 2006, no pet.)(finding
legally and factually sufficient evidence to support termination of parental
rights under (O) for failing to comply with service plan).

D.F. next argues
the evidence is factually insufficient because she completed a “significant
portion” of the plan, and even attended parenting classes which the Service
Plan did not require.  Though D.F. may
have taken additional unrequired actions, she still failed to meet other
material requirements such as obtaining the drug assessment, finding
employment, and demonstrating an ability to provide a safe home.  In re J.F.C.,
96 S.W.3d at 278 (partial compliance is insufficient to establish complete
compliance under court ordered plan); see
also In re M.C.G., 329 S.W.3d 674, 675 (Tex.App.--Houston [14th Dist.]
2010, pet. denied)(holding that any excuse for failing to complete service plan
goes only to best interest determination).

We conclude that
the evidence is factually sufficient to support the court's finding under
Section 161.001(1)(O) because a reasonable trier of fact could reasonably have
formed a firm belief or truth that D.F. failed to comply with the provisions of
the Family Service Plan.  Appellant’s second
issue is overruled.

Best interests

            D.F.’s
final issue is that the evidence was factually insufficient to support
termination of her parental rights because there was insufficient evidence of a
plan for permanency for K.J.F. post-termination that took into account K.J.F.’s
“siblings.”  Further, D.F. contends that
the evidence established that D.F. had completed most of the Service Plan, and
Ms. Berry testified that D.F. was loving and appropriate with K.J.F.

            The
Texas Supreme Court has recognized a number of factors used for best-interest
determinations.  See Holley v. Adams, 544
S.W.2d 367, 372 (Tex. 1976).  These
factors include:  (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.  Holley, 544 S.W.2d at 372 (footnotes
omitted); M.C., 300 S.W.3d at 311.  The Holley
factors are not exhaustive.  M.C., 300 S.W.3d at 511.  No single factor is controlling, and the fact
finder is not required to consider all of the factors.  Id.  Undisputed evidence of a single factor may be
sufficient to support a finding that termination of parental rights is in the
best interest of a child.  Id.

Desires of the child

K.J.F. is very
young.  She was six or seven months old
when the Department was given temporary custody, and was not yet three years
old at the time of the trial.  Obviously,
the record is silent as to K.J.F.’s express desires.

However, Ms. Berry
testified that K.J.F. had adjusted very well to living with her foster family.  She stated that K.J.F. was “very healthy” and
living a “very stable” life.  Evidence
that a child has bonded with a foster parent may support a best interest
finding.  See In re U.P., 105 S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.]
2003, pet. denied).

Ms. Berry acknowledged
that D.F. loved K.J.F. and that the two visits D.F. had with K.J.F. in January
of 2011 had gone “extremely well.”  She
observed good interaction between K.J.F. and D.F.  However, D.F. did not see K.J.F. from June
through December of 2010, did not regularly visit K.J.F. after October 2011,
did not see or ask about K.J.F. from mid-November through December of 2011, and
stopped visiting K.J.F. after the two January 2011 visits.  D.F. argues that evidence of the visits in
January weight this factor in her favor and against termination.  Upon review, we conclude that this factor is
at worst neutral, and at best weighs in support of termination on the basis
that K.J.F.’s bond with the foster family evidences her desires.  However, even if this factor weighed clearly
in favor of D.F., it is outweighed by evidence of other factors supporting
termination.  In re M.H., 319 S.W.3d 137, 150-51 (Tex.App.--Waco 2010, no pet.)(noting
that evidence of the child’s desires was only “marginally relevant” in light of
evidence supporting termination where mother was unable to care for children’s
emotional and physical needs, lacked the requisite parental abilities, and was
unable to provide a stable home, among other factors).

The
emotional and physical needs of the child now and in the future, and the
emotional and physical danger to the child now and in the future.

 

D.F. argues that separation of K.J.F. from
T.W.’s children demonstrated a disregard for K.J.F.’s emotional needs.  D.F. asserts that there is “ample evidence”
that K.J.F. and T.W.’s children were “like siblings.”  D.F.’s focus is that while the Department
allowed joint visitations and that hearings were held on the same dates for
T.W. and D.F., the Department never placed the children together.  The evidence established that while the
Department’s initial plan was family reunification, the plan changed as a
result of T.W. and D.F.’s separation in August of 2011.  Absent the possibility of reunification, the
Department’s goal became relative adoption with a concurrent goal of foster
adoption.  D.W.’s mother’s home study was
not positive.  The Department sought a
home study with D.F.’s sister, but the sister never responded to calls from the
Department.  Ms. Berry testified that the
Department preferred placement with a blood relative and was willing to
consider placement with T.W.’s children, however the Department had a more
permanent placement for K.J.F.

D.F.’s argument is less of an argument that
the Department failed to account for K.J.F.’s emotional needs, and more an
argument that D.F.’s preference was for joint placement of K.J.F. with T.W.’s
children.  D.F. also suggested joint
placement with S.B. if T.W.’s children were placed with S.B.  While there is a strong presumption that the
best interest of the child will be served by preserving the parent-child
relationship; see In re R.R., 209
S.W.3d 112, 116 (Tex. 2006)(per curiam), the focus is on the best interest of
the child - not the best interest of the parent.  See
Dupree v. Tex. Dept. of Protective & Regulatory Servs., 907 S.W.2d 81,
86 (Tex.App.--Dallas 1995, no writ).

There is nothing
in the record indicating that K.J.F. has any special physical, emotional, or
psychological needs.  At the time of
removal, K.J.F. did have medical needs, but they have since been remedied.  However, evidence of unstable and unsafe
housing relates to findings under the third and eighth Holley factors.  See In re R.R., Jr., 294 S.W.3d 213,
236-37 (Tex.App.--Fort Worth 2009, no pet.). 
The evidence in this case shows that D.F. was not able to maintain safe
housing for K.J.F., either in California or in El Paso, and would often leave K.J.F.
in the care of others for long periods of time. 
This evidence tends to support termination.

The parental abilities of the individuals
seeking custody

Admirably, D.F. took it upon herself to
complete parenting classes even though they were not required under the Service
Plan.  However, the characterization of
D.F.’s visitation with K.J.F. differs, with D.F. calling it “consistent” up to
the “breakdown,” after which D.F. voluntarily sought mental health
services.  The Department’s position is
that D.F. failed to secure the basic necessities for K.J.F., failed to keep in
regular contact with K.J.F., and engaged in domestic violence in K.J.F.’s presence.
 The parties disagree as to the reasons
why K.J.F. and T.W.’s children were sent to El Paso, with D.F. asserting this
was a “self-less parenting decision,” and the Department noting that it was
done to prevent California Child Protective Services from removing the children
from D.F.  Certainly, D.F.’s frequent
moves caused concern regarding her parental abilities.  See
Yonko v. Dept. of Family and Protective Services, 196 S.W.3d 236, 247
(Tex.App.--Houston [1st Dist.] 2006, no pet.)(noting same).

At one point, D.F. advised Ms. Berry that
she was going to use a tax refund to obtain an apartment and pay four months’
advance rent while she sought employment. 
However, D.F. did not follow through with her plan, implying that she
and T.W. had a “nice birthday party” for one of T.W.’s daughters and that the
money had been spent on the children.  This
evidence casts additional doubt on D.F.’s parenting abilities.  A reasonable fact finder could certainly form
a firm belief or conviction that D.F. lacked the parental abilities necessary
to care for K.J.F.

The programs available to assist these
individuals to promote the best interest of the child

The evidence
showed that D.F. lived at the Opportunity Center on and off during the pendency
of the case and that the Opportunity Center did not allow children to stay in
its facility.  D.F. contends that Ms.
Berry stopped searching for alternative housing when she learned that there was
room at the Opportunity Center for D.F. and that D.F. had not been banned from
the Opportunity Center.  Ms. Berry discovered
this information at a time when D.F. was living behind the courthouse.  D.F. asserts that the Department failed to
provide her with a full list of services and referrals which could have
assisted her, and that by doing so this factor weighs in her favor.  D.F. states that the “[e]vidence showed that
D.F. did not have a support system outside of the homeless community in El
Paso.”

Again, D.F. did
complete parenting classes and complied with a referral for a psychological
examination, however, D.F. did not attend an initial appointment at Alivane
arranged by Ms. Berry regarding D.F.’s drug use.  Furthermore, Ms. Berry provided D.F. with a
list of apartments which would work with D.F. and T.W., despite D.F.’s concerns
that she would not qualify for Section 8 housing.  The Department was obligated to assist D.F.
in her search for suitable, stable housing, but D.F. was obliged to follow
through on that assistance and she elected not to do so.  D.F. also failed to maintain regular contact
with Ms. Berry.  D.F.’s attempts to
complete some of the plan’s requirements might weigh against termination being
in K.J.F.’s best interest, but her failure to successfully take advantage of
the majority of programs and assistance offered by the Department weighs in
favor of the trial court’s conclusion that termination was in K.J.F.’s best
interest.

The plans for the child by these individuals
or by the agency seeking custody

D.F. does not address this factor
in her brief.  The evidence shows that
D.F. told Ms. Berry that she loved K.J.F., 
but that the only plans for K.J.F’s future were those discussed at the
January 13, 2012 meeting, where D.F. advised Ms. Berry that she hoped K.J.F.
would be placed with D.F.’s sister in Kileen.  As there is no clear evidence indicating
D.F.’s plans for K.J.F. for the future that would serve K.J.F.’s best interest,
this factor favors termination.

The stability of the home or proposed
placement

D.F. does not
address this factor in her arguments.  The
unchallenged evidence presented is that D.F. has been unable to obtain or
maintain stable housing for herself or for K.J.F.  In contrast, the Department has been able to
secure a suitable, stable placement in a foster home for K.J.F., with parents who
are interested in adopting her.  D.F. has
presented no evidence of future stability.  Ultimately, this factor favors termination.  See Doe
v. Brazoria County Child Protective Servs., 226 S.W.3d 563, 575 (Tex.App.--Houston
[1st Dist.] 2007, no pet.)(finding that this factor weighed against parent
where parent lacked a home for the children and could not demonstrate freedom
from drugs).

The acts or omissions of the parent which may indicate that the
existing parent-child relationship is not a proper relationship, and any excuse
for the parent’s acts or omissions.

D.F. contends that
her separation from T.W. and subsequent diagnosis of depression are an excuse
for D.F.’s non-compliance with the Service Plan, specifically for her failure
to maintain visitation with K.J.F.  The
Department contends that D.F.’s:  (1)
history of homelessness, joblessness, and failure to provide an appropriate
home for K.J.F.; (2) ongoing substance abuse during the pendency of the case;
(3) medical neglect of K.J.F., specifically that K.J.F. was in need of medical
attention when removed; (4) commission of an act of domestic violence in
K.J.F.’s presence; and (5) failure to remain in regular contact with K.J.F.,
including absenting herself from K.J.F.’s life for months at a time, all demonstrate
an improper parent-child relationship between D.F. and K.J.F.

D.F. argues that
her separation and depression serve as an excuse for her failure to comply with
the terms of the Service Plan.  D.F.
provides no excuse for her:  (1)
marijuana use; (2) failure to obtain and maintain housing; (3) failure to
obtain or keep employment; (4) failure to comply with the Service Plan by not associating
with persons who use illegal substances or alcohol; and (5) failure to maintain
contact with Ms. Berry as required by the Service Plan.

The trial court,
as fact finder, was entitled to disbelieve some, none, or all of D.F.’s excuses
based on the evidence presented, and reasonably could have formed a firm belief
or conviction that D.F. excuses for her actions and inactions were simply
inadequate.  These factors also favor
termination.

Viewing the
evidence in the light most favorable to the judgment for a legal sufficiency
analysis and all of the evidence equally for a factual sufficiency analysis, we
conclude that a reasonable fact finder could have formed a firm belief or
conviction that K.J.F.’s best interest is served by termination of D.F.’s
parental rights.  The evidence presented
was both legally and factually sufficient to support the trial court’s
finding.  Appellant’s third issue is
overruled. 

CONCLUSION

            Having
overruled each of Appellant’s issues, the judgment of the trial court is
affirmed.

 

 

November
7, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, C.J., Rivera, and Antcliff, JJ.











[1]
This opinion shall refer to the subject child, and any other related party, by
their initials.

 





[2]
Appeals from a judgment terminating parental rights are accelerated.  See
Tex.R.App.P. 28.4.  The Texas Supreme Court has determined that
an appellate court should dispose of these appeals within 180 days after the
notice of the appeal is filed.  Tex.R.Jud’l Admin 6.2(a).





[3]
The order appears in the Clerk’s Record.





[4]
A jury was waived.

 





[5]
Counsel for D.F. requested a
continuance on the basis that she was unable to contact her client.  The motion was denied by the court.





[6]
Ms. Berry advised D.F. of the likely denial of S.B. as a potential placement
after the January 13 visitation with K.J.F.





[7]
See In re S.N., 287 S.W.3d at 190; In re A.A.A., 265 S.W.3d 507, 515
(Tex.App.--Houston [1st Dist.] 2008, pet. denied); In re S.A.P., 169 S.W.3d 685, 705-06 (Tex.App.-- Waco 2005, no
pet.); In re M.N., No.
11-10-00129-CV, 2011 WL 917837, *3 (Tex.App.--Eastland Mar. 17, 2011, no
pet.)(mem. op.); In re M.L.J., No.
2-07-178-CV, 2008 WL 1932076, *5 (Tex.App.--Fort Worth May 1, 2008, pet denied)(mem.
op.); In re M.B., No. 07-04-0334-CV,
2004 WL 2867544, *2 (Tex.App.--Amarillo Dec. 14, 2004, no pet.)(mem. op.); see also In re E.S.C., 287 S.W.3d 471,
475 (Tex.App.--Dallas 2009, pet. denied)(assuming without deciding that removal
for “the abuse or neglect of the child” is an element of subsection
161.001(1)(O)); L.Z. v. Texas Dept. of
Family and Protective Servs., No. 03-12-00113-CV, 2012 WL 3629435, *8
(Tex.App.--Austin Aug. 23, 2012, no pet.)(following E.S.C. in assuming without deciding this issue).

 





[8]
In her summary D.F. contends that:  (1)
there was insufficient evidence that she had specific knowledge of the tasks
she was assigned to complete and the consequences of her failure to do so; (2)
that there was “no evidence” of alleged abuse or neglect at the initiation or
during the pendency of the case. 
Alternatively, she does admit that while there was “some evidence” it
fell below the quantum of proof required.





[9]
Similar language is found in In re S.N., where the trial court
entered temporary orders finding, in part, that “‘there was a danger to the
physical health or safety of the children’ and that ‘there is a substantial
risk of a continuing danger if the children are returned home.’”  In re S.N.,
287 S.W.3d at 190.