COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE INTEREST OF A.B., A CHILD. | § | No. 08-07-00307-CV |
| | § | Appeal from the |
| | § | 65th District Court |
| | § | of El Paso County, Texas |
| | § | (TC#2006CM6363) |
| | § | |

**O P I N I O N**

A.M.B., Appellant and biological mother of A.B., appeals the trial court's determination that her points of appeal of the termination of her parental rights are frivolous. We affirm in part and reverse in part the trial court's frivolousness finding. We affirm the judgment of the trial court with regard to its termination order.

**I. BACKGROUND**

A.B. was born on September 28, 2006. Four days later, the Texas Department of Family and Protective Services (the "Department") filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. The Department sought temporary orders appointing it the temporary sole managing conservator of A.B. The Department also sought termination of A.M.B.'s parental rights, should reunification of A.B. with A.M.B. fail, because, according to the Department, A.M.B. knowingly placed the child, or knowingly allowed her to remain, in conditions or surroundings that endangered A.B.'s physical and emotional well-being and engaged in conduct, or knowingly placed her with persons who engaged in conduct, that endangered her physical or emotional well-being.

On September 4, 2007, the trial court held a final hearing on the issue of termination of the parent-child relationship. At the hearing, the Department requested leave to proceed on Texas Family Code subsections 161.001(1)(M) and (N), instead of subsections 161.001(1)(D) and (E), as originally pled.[1] Following the hearing, the trial court entered an order of termination. Applying the "clear and convincing evidence" standard, the trial court found that the termination of the parent-child relationship was in the best interest of A.B. The trial court also found that A.M.B. had had her parent-child relationship terminated with respect to another child, based on a finding that A.M.B.'s conduct at that time had been in violation of subsections 161.001(1)(D) or (E) of the Texas Family Code. In addition, the trial court found that A.M.B. constructively abandoned A.B. while she was in the permanent or temporary managing conservatorship of the Department for not less than six months and that: (1) the Department had made reasonable efforts to return A.B. to A.M.B.; (2) A.M.B. had not regularly visited or maintained significant contact with her; and (3) A.M.B. had demonstrated an inability to provide A.B. with a safe environment.

Thereafter, A.M.B. filed a Notice of Points on Appeal of Termination of Parental Rights in which she stated grounds of appeal and requested that the trial court find that the grounds were not frivolous. In her first point, A.M.B. argued that, in the case of a parent with a cognitive disorder, termination of the parent-child relationship on the basis of failure to comply with a court order or tasks assigned by the Department should require a showing that the orders and requirements "were communicated in a manner developmentally appropriate and capable of being understood by the parent." A.M.B.'s second and third points were that the evidence was legally and factually insufficient to show that termination was in the best interest of A.B., because the Department made no showing that the tasks required of A.M.B. were communicated in an effective manner,

---

[1] A.M.B. does not raise this issue on appeal.

considering the parent's cognitive disorder. A.M.B.'s fourth point was that, where the grounds for termination are that the parent exposed the child to abuse based on neglect and the parent has a cognitive disorder, the party seeking termination must show that it communicated with the parent in an effective, developmentally-appropriate manner and that the parent was unwilling or unable to perform. A.M.B.'s fifth point was that there was factually insufficient evidence to terminate the relationship based on neglect of the child. A.M.B.'s sixth point was that there was legally insufficient evidence to terminate the relationship, because there was no evidence of harm to A.B. at the time she was removed from A.M.B. at the hospital.

On October 15, 2007, the trial court held a hearing on A.M.B.'s points of appeal, pursuant to section 263.405(g) of the Texas Family Code. The Department argued that termination was based on the grounds that A.M.B.'s parent-child relationship with her other two children had been previously terminated and that she had constructively abandoned A.B. Accordingly, the Department argued that the appeal was frivolous, because the points of appeal addressed grounds for termination that had not been relied upon by the trial court.[2] The Department entered the termination order concerning A.B. and A.M.B. as an exhibit. The trial court held that A.M.B.'s grounds for appeal were frivolous.

## II. DISCUSSION

### A. Review of Frivolousness Determinations

Section 263.405 of the Family Code provides the procedure for appeal of an order that terminates parental rights. A party wishing to appeal a final order must file points of appeal with the

---

[2] As noted, the Department requested leave to proceed at the final hearing on Texas Family Code subsections 161.001(1)(M) and (N). Appellant alleges in her brief that the trial court's file did not reflect this change at the time appellate counsel was appointed. During the hearing on her points of appeal, counsel for A.M.B. explained that his points of appeal were based on a telephone description of the grounds for termination given by A.M.B.'s trial counsel. However, the termination order denotes subsections 161.001(1)(M) and (N) as grounds for termination.

trial court.  *See* TEX. FAM. CODE ANN. § 263.405(b).  The trial court must hold a hearing and determine whether the appeal is frivolous,[3] as provided in the Civil Practice and Remedies Code, which states that "[i]n determining whether an appeal is frivolous, a judge may consider whether the appellant has presented a substantial question for appellate review." TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b).

We review a trial court's finding that a party's points of appeal of a final order are frivolous under an abuse of discretion standard.  *In re M.N.V.*, 216 S.W.3d 833, 834 (Tex. App.--San Antonio 2006, no pet.).  A party's appeal is initially limited to review of the trial court's frivolousness finding.  *See In re K.D.*, 202 S.W.3d 860, 865 (Tex. App.--Fort Worth 2006, no pet.) (stating that section 263.405(g) limits the scope of appellate review to the trial court's determination that the appeal is frivolous).  In other words, before we may consider the substantive merits of an appeal from an order terminating parental rights in which, as here, a frivolousness finding was made, we must first determine whether the trial court properly found the appeal to be frivolous.  *Lumpkin v. Department of Family & Protective Servs.*, 260 S.W.3d 524 (Tex. App.--Houston [1st Dist.] 2008, no pet.).  Moreover, an "appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal . . . ." TEX. FAM. CODE ANN. § 263.405(i).

### B.  A.M.B.'s Arguments on Appeal

A.M.B. abandons some of the grounds for appeal offered in the trial court and seeks to add new grounds.  A.M.B. waives appeal of her fourth, fifth, and sixth trial-court points, and purports to pursue only her first three points before this Court.  A.M.B. first argues that the Department, in order to demonstrate that it has made reasonable efforts to return the child to the mother, pursuant

---

[3] *See* TEX. FAM. CODE ANN. § 263.405(d)(3).

to section 161.001(1)(N) of the Texas Family Code, should be required to prove that its efforts to do so were "communicated in a developmentally appropriate manner where a parent is known to possess cognitive deficits." A.M.B.'s second issue on appeal is that, because the Department possessed information that A.M.B. had "cognitive deficits," the Department should have been required to demonstrate that "reasonable accommodations for the mother's cognitive deficits had been attempted and were unsuccessful in preserving the parent-child relationship." Finally, A.M.B. argues that the evidence was factually insufficient to support termination on the grounds of best interest of the child, because A.M.B. possesses "cognitive deficits" and there was no evidence that she had been provided services in a "developmentally appropriate manner."

Despite A.M.B.'s apparent claim that the first three issues which she raised before the trial court and the three issues posed to this Court are the same, it appears that only one of the issues is similar, to wit, whether the evidence was factually sufficient to support a finding that termination is in the child's best interest, where the mother is cognitively impaired. We may not consider any issues that were not specifically presented to the trial court. *See* TEX. FAM. CODE ANN. § 263.405(i); *In re C.B.M.*, 225 S.W.3d 703, 705-06 (Tex. App.--El Paso 2006, no pet.). We therefore consider only the factual-sufficiency issue in this proceeding.

## C. Frivolousness of A.M.B.'s Factual-Sufficiency Issue

With regard to this issue, counsel for A.M.B. made the argument at the hearing to determine frivolousness that there were allegations that A.M.B. suffered from a cognitive disorder and that, with regard to the finding of best interest, he wished to have the appellate court determine "who has the burden of dealing with that." The Department did not address the evidentiary sufficiency of best interest, but instead argued that A.M.B.'s points concerning the service plan were frivolous, because failure to comply with the service plan was not the basis for the termination. After hearing the

arguments of A.M.B. and the Department and receiving the Department's evidence, the trial court made the following statement concerning the sufficiency of evidence as to best interest:

> The grounds utilized in [the termination] suit are not grounds that make reference to the service plan. In the other ground, though, the best interest ground, that is part of the information that comes in for the Court to consider, ultimately, whether the best interest are [sic] served by granting the termination. And in that respect, the service plan does come into play.
>
> The issue has been raised whether or not the cognitive disorder that might be present when the respondent was presented with such service plans, whether that would factor in, or should have been factored in and proven in order to move onto the next stage, whether or not the respondent mother understood the service plan and her responsibilities under it.
>
> The Court recalling that particular trial, in so far as the service plan portion of it is concerned, that was a very minimal portion of the entire basis under which the best interest was ultimately determined by the Court. So that the Court, at this time, taking the whole cause as a whole, does find that that particular issue concerning cognitive disorder and the service plan, in the scheme of things, and the overall presentation of evidence in reference to the best interest would make that point a frivolous point, as it's really not directly in point, and whatever reference it does have is a very minimal consideration.

The particular evidence supporting the best-interest finding was not presented at the hearing, nor is it apparent in the termination order itself, which was the sole exhibit entered at the hearing. Looking only to the reporter's record and the clerk's record relating to the hearing, we are unable to determine whether the point of appeal was frivolous. For this reason, we conclude that the trial court erred in finding the point frivolous. We will consider the entire appellate record to determine whether the evidence was factually sufficient to support the best-interest finding. *See In re M.N.V.*, 216 S.W.3d at 835, *disposition on merits,* 2007 WL 56605 (Tex. App.--San Antonio Jan. 10, 2007, no pet.) (finding that point of appeal was not frivolous and ordering parties to file briefs on the merits).[4]

---

[4] The parties have previously submitted briefs that address the trial court's best-interest finding.

## D. Factual Sufficiency

Before parental rights may be terminated, a petitioner must establish by clear and convincing evidence that (1) the respondent parent has committed one or more of the statutory acts or omissions and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2); *In re E.M.E.*, 234 S.W.3d 71, 72 (Tex. App.--El Paso 2007, no pet.). Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007. The Texas Supreme Court has recognized several factors to consider in determining whether termination is in a child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). These include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Id.*

These factors are not exhaustive, and no single consideration is controlling. A fact finder is not required to consider all of them. *Id.* Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of a child. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). On the other hand, the presence of scant evidence relevant to each *Holley* factor will not support such a finding. *Id.*

The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Texas Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.--Dallas

1995, no writ). We indulge in a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). In reviewing the record, we keep in mind that the evidence establishing a statutory ground for termination may also be probative of the best-interest issue. *C.H.*, 89 S.W.3d at 28.

At the final hearing, the Department introduced into evidence certified copies of the termination orders concerning A.M.B.'s other two children, which were signed September 15, 2006. Those termination orders recited that the court had found, by clear and convincing evidence, that A.M.B.: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) engaged in conduct, or knowingly placed the children with persons who engaged in conduct, which endangered the physical or emotional well-being of the children; and (3) failed to comply with court-ordered actions necessary for the return of the children from the managing conservatorship of the Department. The trial court found that the termination of A.M.B.'s parent-child relationship was in the best interests of the two children.

Kaysie Reinhardt testified on behalf of the Department in her capacity as the supervising caseworker for A.B. Reinhardt testified that A.M.B. was contacted by her caseworker, Paula Anaya, when Anaya and a technician went to A.M.B.'s address on August 17, 2007, to engage her in services and determine what A.M.B.'s plans were. Reinhardt testified that A.M.B. yelled at the caseworker and technician through the door and refused to meet with them.

A family service plan was filed on November 27, 2006. At the service-plan meeting, A.M.B. and the Department went over the details of the service plan. A.M.B. was told that she needed to comply with the service plan, that she needed to keep in contact with the Department, and that she had to comply with all the orders or recommendations made concerning services from the Texas

Department of Mental Health and Mental Retardation ("MHMR"). A.M.B.'s attorney informed her of the importance of obtaining services at MHMR and of staying in touch with the Department's caseworker.

According to the information contained in the Department's file, A.M.B. had not complied with the family-service plan, nor had she contacted the Department to engage in services. In addition, she had not visited A.B. or maintained any significant contact with her. A.M.B. also never expressed any wish, to Reinhardt's knowledge, that she wanted A.B. to be returned to her. A.M.B. had not supported A.B. financially in any way since she was placed in foster care. Reinhardt also testified that A.B. had been placed in foster care with her two siblings and had established a bond with them. Reinhardt believed that A.B. did not have a bond with A.M.B., because A.M.B. had not been with her. Reinhardt believed that termination was in A.B.'s best interest. Reinhardt did not believe that A.M.B. could take care of A.B.

On cross-examination, Reinhardt was asked about A.M.B.'s mental-health issues, and she responded that she believed that A.M.B. was bipolar. A.M.B. had been in the Department's foster-care system herself when she was a child. A.M.B. had been abused both sexually and physically by her father, and she had been in many different residential treatment settings and different psychiatric settings. Reinhardt noted that MHMR had tried to engage A.M.B. in services several times, but that A.M.B. does not follow through with services and is "often times very unstable."

Reinhardt was also asked the reason for the Department's intervention in the case. Reinhardt stated that the Department received an intake while A.B. was in the hospital. The hospital was concerned that A.M.B. was unstable and had been aggressive with the medical staff. The Department determined that it needed to remove A.B., based on A.M.B.'s previous history and the prior endangerment to A.M.B.'s other two children.

Reinhardt was also asked what steps the Department had taken with A.M.B. with regard to her mental-health issues. Reinhardt testified that the Department and A.M.B. had had the service-plan meeting in November 2006 and that it had tried to get A.M.B. to follow through with services. A.M.B. was told that she needed to comply with MHMR services and that she had to keep in contact with the Department, and the details of the service plan were reviewed with her. However, the Department was unable to successfully engage A.M.B. in any services after that meeting. The Department's caseworker had attempted to work with MHMR to re-engage A.M.B. in services through MHMR; however, A.M.B.'s case had been closed at MHMR, because she would not remain on her medication and was not consistent with her services.

The Department had difficulty locating A.M.B., because she moved frequently. The Department eventually located A.M.B. after the Department received information concerning another individual with special needs who had previously been in the Department's foster-care system. Reinhardt testified that the previous client had alleged that A.M.B. was her upstairs neighbor and that A.M.B. had taken her social security payments. After receiving this information, A.M.B.'s caseworker and a technician visited the address to check on A.M.B. and assess the situation. As discussed above, A.M.B. would not allow the caseworker into the apartment, refused to meet with her, and yelled obscenities at her.

The Department also entered as an exhibit the transcript of A.M.B.'s testimony at the November 3, 2006, hearing held pursuant to section 262.201 of the Family Code. At that hearing, A.M.B. testified that she was the mother of A.B. She identified A.B.'s father and testified that he had been staying at her apartment. A.M.B. was asked whether she remembered slashing the father's clothing with a knife. A.M.B. replied that she did not, but she stated that the father had stolen a lot of her stuff, including all of the things for the baby. A.M.B. denied having tried to stab the father,

but admitted that she had pleaded guilty to making a terroristic threat against the father and had received a sentence of time served. A.M.B. testified that she did not have a good relationship with A.B.'s father. She also testified that the father used to sell marijuana and crack cocaine, that she heard that he was on probation, and that he consumed drugs and alcohol while on probation.

A.M.B. stated that she needed to buy furniture for her apartment. She did not have a telephone, but had other utilities. She did not have food or a crib set up for the baby, because she had not had the baby. She currently had a relationship with a man who was "not necessarily my boyfriend. He's more like my husband," whom she had known for a year. A.M.B. refused to provide the man's name or his occupation. She testified that she was not working, because she received social security checks and could not work, because, if she did so, she would no longer receive checks.

A.M.B. admitted that she had not seen A.B. since the Department had taken custody of the child. According to A.M.B., she did not contact the Department to see A.B., because she did not have any money for a telephone. A.M.B. was asked whether she currently had a caseworker assigned to her from MHMR. According to A.M.B., her MHMR caseworker had quit, and she had lost contact with her. A.M.B. stated that, if the court asked her to, she would go back to MHMR for services and take her medication every day. However, she maintained that she would not do anything unless God asked her and would not do anything, if God did not want her to do it. A.M.B. stated that she knew what God wanted her to do; however, she refused to describe it, because God allegedly told her to keep it to herself.

A.M.B. also testified concerning the prior termination of her parental rights for her two other children. She admitted that she failed to attend some of her parenting classes. She also admitted that she did not complete her individual therapy. A.M.B. explained that she stopped taking her

medication because she was pregnant, and she was unable to comply with the court's orders, because she had been in jail. A.M.B. believed that foster care was a good place for A.B., because she did not have any furniture in her apartment, and that she would like for A.B. to stay in foster care until she set up her apartment. She later stated that she wanted to take A.B. home with her.

On appeal, A.M.B. argues that the evidence was factually insufficient, because the evidence relating to the *Holley* factors is either non-existent, weak, or favors her. On the contrary, the evidence showed that A.M.B. was uninterested in A.B. and was very likely unable to care for her. The evidence is undisputed that A.M.B. did not have any contact with, or seek to have any contact with, A.B. since the Department obtained conservatorship. A.M.B. provided no financial support for A.B. Despite warnings of the need to do so, A.M.B. refused to comply with the family-service plan, including the requirements for parenting and anger classes and treatment from MHMR. A.M.B. refused to let the Department know where she was living and, when located, yelled at the Department's caseworker and technician and refused to meet with them. In addition, there was evidence that A.M.B. had a history of violence, having been arrested and jailed for making a terroristic threat to A.B.'s father with a knife.

With regard to A.B., the evidence showed that she had been placed in a foster home with her two sisters, A.M.B.'s other children, and had bonded with them. The Department's plan for A.B. was for adoption by the foster parents. Reinhardt testified as to her belief that adoption by the foster parents would provide A.B. with a safe and permanent home and that the proposed adoption was in A.B.'s best interest.

As to the final factor, any excuse for acts or omissions of the parent, A.M.B. argues that it was known that she had a cognitive disorder or mental illness and that there was no evidence that "the introduction [of] more aggressive case management might not have resulted in treatment which

would ameliorate mother's mental health conditions." A.M.B. cites no authority requiring the Department to make such a showing, but argues that this Court should simply create a new rule.

It is not the role of this Court to legislate. Moreover, the evidence offered at the final hearing by the Department established that it had attempted to assist A.M.B., but was unable to do so, because her actions precluded any assistance. The evidence was that MHMR closed A.M.B.'s case, because she would not participate in its program and would not take her prescribed medication. Despite being aware of the requirements for services, A.M.B. did not participate in any such services. A.M.B. did not stay in contact with the Department, and the Department was unable to locate her for an extended period of time, because she moved frequently and did not provide the Department with contact information. The Department was able to locate A.M.B. only after it received information that A.M.B. lived upstairs from a previous recipient of Department services and had allegedly taken that individual's social security payments. When A.M.B. was located, she refused to allow the Department's caseworker access to her home, and she cursed at the caseworker through her door.

The evidence offered by the Department was factually sufficient to support the trial court's finding that termination of A.M.B.'s parent-child relationship was in the best interest of A.B.[5] We overrule this issue.

### III. CONCLUSION

We affirm in part and reverse in part the trial court's frivolousness finding. We affirm the trial court's judgment with regard to the termination order.

---

[5] The termination order also terminated the parent-child relationship between A.B. and her father. The father has not appealed that order.

KENNETH R. CARR, Justice

October 9, 2008

Before Chew, C.J., McClure, and Carr, JJ.