**Opinion filed April 22, 2010**



# In The

# Eleventh Court of Appeals

_____

## No. 11-09-00288-CV

_____

## IN THE INTEREST OF G.M.R., A CHILD

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-2810-PC**

## M E M O R A N D U M   O P I N I O N

G.M.R. was born in December 2007. In August 2008, the Texas Department of Family and Protective Services was named temporary managing conservator. Her mother executed an irrevocable affidavit of relinquishment of her parental rights. After a bench trial, the trial court terminated the parental rights of both G.M.R.'s mother and father. The father filed a statement of points for appeal as required by TEX. FAM. CODE ANN. § 263.405(b) (Vernon 2008) challenging both the legal and factual sufficiency of the evidence to support each ground for termination. The trial court found that any appeal was frivolous pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b) (Vernon 2002). The father challenges both the trial court's finding that his appeal is frivolous and the termination of his parental rights. We affirm.

In his first issue, the father contends that the trial court abused its discretion when it found that his appeal was frivolous. An appeal is frivolous under TEX. FAM. CODE ANN. § 263.405(d) (Vernon 2008) and Section 13.003(b) when the trial court determines that it lacks an arguable basis in law or in fact. *D.R. v. Tex. Dep't of Family & Protective Servs.*, 281 S.W.3d 598, 602 (Tex. App.—El Paso 2008, no pet.); *In re M.N.V.*, 216 S.W.3d 833 (Tex. App.—San Antonio 2006, no pet.); *In re K.D.*, 202 S.W.3d 860, 866 (Tex. App.—Fort Worth 2006, no pet.); *In re H.D.H.*, 127 S.W.3d 921, 923 (Tex. App.—Beaumont 2004, no pet.). At this stage, appellate review is limited to a review of the trial court's exercise of its discretion in determining that the appeal is frivolous. *In re A.B.*, 269 S.W.3d 120, 124 (Tex. App.—El Paso 2008, no pet.); *Lumpkin v. Dep't of Family & Protective* Servs., 260 S.W.3d 524, 526-27 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *K.D.*, 202 S.W.3d at 865. This determination is made based on the record before the appellate court. *H.D.H.*, 127 S.W.3d at 924.

The record before this court consists of the clerk's record, the supplemental clerk's record, and the reporter's record from both the trial on the merits and the hearing on the father's points for appeal. At the hearing, the trial court took judicial notice of the affidavit of Wendy Duran, which was attached to the State's response to the father's motion for new trial. The trial court entered detailed findings of fact, which are included in the clerk's record. The record reflects that the same trial judge presided over the trial to terminate and the hearing on the father's points on appeal.

The mother testified that the father was physically abusive. She described how he abused illegal drugs and would drink. The drugs and alcohol would make him more aggressive. She described the father as "always angry." The father often hit her when he drank. One time, he hit their child when he was trying to hit her. The mother testified that the father would threaten to hurt her and those she cared about if she left him. He also told her that, if she left him, he would have more rights to their child.

The father did not support the child but would ask his father (the child's grandfather) for money to support the child. She stated that, when he did not drink, he was calm and nice. However, he had never bonded with their child.

The mother testified that she took their child and went to a battered women's shelter in order to protect their child. The department had already removed the child from her custody when she returned to the father. She stated that she returned because he had told her that he had

changed. However, the father choked her and caused injuries to her neck that were similar to injuries as if she had been in a car wreck. She was treated in a hospital for these injuries. After this incident, she obtained a protective order against the father.

The mother stated that she was relinquishing her parental rights because she believed it was in the child's best interest. She stated that neither she nor the father could provide the child with a stable home.

Teri Valero, a licensed professional counselor, testified that she was alarmed at the father's anger. He told her that he "wanted the anger" and that he "wanted revenge on the situation." He was easily frustrated, very self-centered, and told her that he liked "to be spoiled." Valero stated that the father's attitude and anger was "unusual" and that he was dangerous. Although he was approved for eight units of therapy, he only appeared for one.

Valero had observed the father's interactions with the child. The child did not respond to her father, and he was not nurturing toward her. Valero observed no bond whatsoever between the two.

Wendy Duran, a caseworker with the department, testified that the department first became involved with the child shortly after her birth due to concerns of physical neglect and the condition of the home. The department again became involved in March 2008. The child had been left in the father's pickup unattended. Duran investigated the inside of the home and found that it was dirty and unsafe. The father was uncooperative and would not answer questions.

In the summer of 2008, the department received approval for the emergency removal of the child. The child was not placed with the father because of the previous concerns as well as concerns about domestic violence. Duran described how both parents were offered services and how both failed to complete the plans to have the child returned to them. The father did not maintain steady employment, did not complete counseling, and did not follow the recommendations suggested as a result of a drug and alcohol assessment. He visited the child only seven of the scheduled thirty-two times. He often tested positive for alcohol. When the father did visit the child, Duran observed no bond between them.

The father testified that the mother of their child was "childlike" and that he would get frustrated with her. He stated that he was not "qualified" to handle someone like her. She would try to scratch his face, and he would restrain her. He stated that she was not demanding, just

"extremely playful" and "childlike." He pushed her twice but neither time was she holding their child.

He stated that his plan was for the child to remain in foster care until the protective order expired in about a year. At that time, he thought that she could come live with him. He disagreed with Valero's statements that he was very angry and had a quick temper. He stated that he did have a quick temper with the mother. He denied ever hitting the mother or their child and denied drinking excessively. He asserted his Fifth Amendment rights when asked about his arrest the week before trial for robbery and evading arrest.

The father has not established that the trial court abused its discretion in determining that this appeal was frivolous. The record before this court supports the trial court's conclusion that the points on appeal lacked arguable basis in law or in fact. The first issue is overruled.

Because we have found that the trial court did not err in determining that the appeal was frivolous, we do not reach the second issue that challenges the merits of the order terminating the father's parental rights.

The order of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


April 22, 2010

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

4