

**IN THE**
**TENTH COURT OF APPEALS**

**No. 10-18-00274-CV**

**IN THE INTEREST OF A.J.B. AND A.J.B.,**
**CHILDREN**

**From the County Court at Law**
**Navarro County, Texas**
**Trial Court No. C17-25,625-CV**

## MEMORANDUM OPINION

After a jury trial, the trial court rendered a final order terminating the parental rights of Appellant D.A. to her twin children, "Andy" and "Allen,"[1] who were seventeen months old at the time of trial. D.A. filed a motion for new trial which was denied by the trial court without a hearing. A.B., the twins' father, executed an affidavit of relinquishment of parental rights prior to trial and does not appeal.

---

[1] We will refer to the twins and their siblings, "Sarah" and "AJ," by aliases. *See* TEX. R. APP. P. 9.8 (related to protection of minor's identity in cases involving termination of parental rights). Initials will be used for the other private parties.

D.A. raises one issue in her appeal—that the evidence is legally and factually insufficient to establish that termination is in the children's best interest. We will affirm the trial court's termination order.

*Background*

AJ, D.A.'s second child, was born on February 16, 2016. Both AJ and D.A. tested positive for cocaine at the time of delivery, and D.A. admitted that she had used cocaine during her pregnancy. Both AJ and his older sister, Sarah, who was sixteen months old, were removed from D.A.'s custody by the Department of Protective and Regulatory Services. While custody proceedings were ongoing as to AJ and Sarah, D.A. became pregnant again. Andy and Allen were born on January 13, 2017. The Department did not immediately move to remove the twins from D.A.'s care as she tested negative for any type of drug use during her pregnancy and at the time of the twins' birth. The Department did, however, establish a safety plan for the twins that D.A. agreed to follow.

The Department filed a petition to terminate D.A.'s rights to the twins approximately one month after their birth because D.A. failed to comply with the safety plan. The trial court granted temporary managing conservatorship of the twins to the Department, and the twins were placed with foster parents—Mr. and Mrs. T. The Department then established a service plan for D.A. that included parenting classes and drug counseling. An earlier service plan was still in place in relation to AJ and Sarah, but D.A. had failed to complete all of the services required in that plan. Ericka Kincaid, the caseworker assigned to the twins' case, and who was also assigned to Sarah's and AJ's case, testified that the concerns the Department had in relation to AJ and Sarah still

existed in relation to the twins, specifically regarding D.A.'s drug usage, her lack of parenting skills, her inability to provide safe and stable housing for the children, and her lack of employment.

Trial in the termination of D.A.'s parental rights to Sarah and AJ took place in September 2017. The jury did not find that D.A.'s parental rights should be terminated, but managing conservatorship of the children was awarded to the Department. Sarah and AJ remained in the home of P.H., a paternal aunt, who had agreed to foster them. Over the next year, D.A. failed to complete any of the requirements of the service plan in the twins' case other than attending one counseling session.

### Standard of Review

Both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the petitioner bears the burden of proof. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (discussing legal sufficiency review); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*Id.* (footnotes and citations omitted); *see C.H.*, 89 S.W.2d at 25.

We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied*)*. The factfinder may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

In a proceeding to terminate the parent-child relationship brought under Family Code § 161.001, the Department must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (b)(1) of § 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1), (2) (West Supp. 2017); *Swate v. Swate*, 72

S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the Department of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976); *Swate*, 72 S.W.3d at 766. "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). As noted, D.A. does not challenge the jury's findings regarding the violations under § 161.001, but only the jury's finding that termination is in the best interest of the children.

## *Best Interest of the Children*

In determining the best interest of a child, a number of factors are considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist this individual; (6) the plans for the child by this individual; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* at 372. A single factor may be adequate in a particular situation to support a finding that termination is in the best interest of a

child. *See In re B.H.R.*, 535 S.W.3d 114, 123 (Tex. App.—Texarkana 2017, no pet.). We may also consider evidence supporting violation of one or more of the predicate acts in the best-interest analysis. *In re A.M.*, 495 S.W.3d 573, 581 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (citing *C.H.*, 89 S.W.3d at 27-28).

A. The Desires of the Child. "When children are too young to express their desires, the factfinder may consider whether the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also In re A.W.*, 444 S.W.3d 690, 693-94 (Tex. App.—Dallas 2014, pet. denied) (children did not testify, but court found their desires through evidence that children were happy with their foster placement and did not mention their mother as frequently at time of trial).

As noted, the twins were placed in the care of Mr. and Mrs. T. when they were less than a month old and remained continually in their care through the time of trial. Kincaid and Paula McNeel, the Court-Appointed Special Advocate, testified that the twins were doing well in their placement with Mr. and Mrs. T. and that they have bonded with and love each other. All of the witnesses who testified, including D.A., believed that the twins were being well cared for by Mr. and Mrs. T. Kincaid further testified that she believes Mr. and Mrs. T. can provide for the twins' physical and emotional needs in the future even though Mr. T. and Mrs. T are both in their sixties.

None of the witnesses testified about any particular bond between D.A. and the twins.

B.  The Emotional and Physical Needs of the Child Now and in the Future; The Emotional and Physical Danger to the Child Now and in the Future.  The need for permanence is the paramount consideration for a child's present and future physical and emotional needs. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ).  Very young children are particularly vulnerable if left in the custody of a parent who is unable or unwilling to protect them or attend to their needs because they have no ability to protect themselves. *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied) (op. on reh'g).  Evidence of a parent's unstable lifestyle may support a conclusion that termination is in a child's best interest. *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).  An unstable lifestyle consists of such things as a history of arrests and incarcerations, illegal drug use, and association or co-habitation with others of similar backgrounds. *See In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.); s*ee also In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.).  Additionally, violation of the safety plan developed by the Department may be viewed as conduct that endangers a child. *In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied).

When D.A. left the hospital with the twins, she moved into the home of J.T., an acquaintance.  Kincaid made weekly visits to check on the twins.  Kincaid testified that the safety plan provided that the twins should sleep in J.T.'s room at night and that J.T. would awaken D.A. to care for them.  Kincaid ascertained that D.A. was not following the safety plan because D.A. refused to allow the babies to sleep in J.T.'s room and

because D.A. was sleeping with the twins or placing them both in the same bassinet, which posed a danger of suffocation. Kincaid further testified that J.T. no longer wanted D.A. living in her home, and noted that D.A. changed residences often while under the Department's supervision.

Although D.A. was drug-free during her pregnancy and when the twins were born, she tested positive for cocaine in August and December of 2017 and refused at least six drug tests between the time the twins were removed and the day of trial. The factfinder may infer from a refusal to take a drug test that the parent was using drugs. *In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied). Linda Harris, to whom D.A. was referred for drug testing, testified that she collected samples for drug testing from D.A. on several occasions, but that D.A. refused to submit to the collection of samples on several other occasions. Harris testified that on two occasions D.A. submitted what Harris believed were fake samples of hair and urine. When Harris refused to accept the samples, D.A declined to provide additional samples in Harris's presence.

Kincaid also testified that D.A. had several encounters with law enforcement after the twins were removed and that D.A. was intoxicated on each occasion. The officers involved testified regarding D.A.'s disoriented, assaultive, and drunken behavior. On one occasion, D.A. was hospitalized and tested positive for cocaine as well as alcohol. One arrest was for assault on D.A.'s boyfriend, C.P., with whom she was living. A.B., D.A.'s husband and the father of her four children, was living with D.A. and C.P. at that

time, having moved in after his release from prison. Both C.P. and A.B. have extensive criminal histories, and both have histories of drug usage.

At the time of trial, D.A. was living with C.P.'s mother. Kincaid and others testified that they were concerned that D.A. would also renew her relationship with A.B. A.B.'s brother testified about the volatility of the relationship between D.A. and A.B., which was marked by drugs, alcohol, and domestic violence.

D.A. was referred to a counselor to determine if she had a substance abuse problem and whether she would benefit from treatment. D.A. previously completed a drug treatment program as part of the service plan related to Sarah and AJ, but tested positive for cocaine after the birth of the twins. D.A. told the counselor, Erika Barraza, that she first began using alcohol, marijuana, and cocaine at the age of nineteen, but that she discontinued use of marijuana and cocaine after three years. Barraza testified that D.A. said she averaged drinking twelve to thirty beers per day, although at trial D.A. denied saying that. D.A. attended no further counseling sessions despite Barraza's recommendation.

Kincaid testified that other than attending one session with Barraza, D.A. failed to complete any of the other services required by the second service plan. A failure to complete a service plan can be one of a number of the acts or omissions by a parent that are relevant to a best-interest analysis. *See In re K.F.*, 402 S.W.3d 497, 506 (Tex. App.— Houston [14th Dist.] 2013, pet. denied); *In re A.B.*, 269 S.W.3d 120, 129 (Tex. App.—El Paso 2008, no pet); *see also In re M.R.*, 243 S.W.3d at 821 (noting that parent's failure to

complete service plan supports finding that termination is in child's best interest). Kincaid stated that D.A. told her that she did not believe that she needed to complete the services required in the twins' case because she had already completed them in the prior case involving Sarah and AJ. Kincaid testified that D.A. told her that D.A. did not believe the Department would successfully terminate her rights to the twins because it had failed to do so with Sarah and AJ.

C. The Parental Abilities of the Individuals Seeking Custody and the Programs Available to Assist These Individuals. In reviewing the abilities of a parent, a factfinder can consider the parent's past neglect or past inability to meet the physical and emotional needs of their children. *See D.O. v. Tex. Dep't of Human Servs.*, 851 S.W.2d 351, 356 (Tex. App.—Austin 1993, no writ), *disapproved of on other grounds by J.F.C.*, 96 S.W.3d at 267 n.39. A parent's failure to show that he or she is stable enough to parent a child for any prolonged period entitles the factfinder "to determine that this pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.).

While D.A. attended some parenting classes as required by the first service plan, she was unable to demonstrate anything she had learned in those classes in her interactions with the children. D.A. also failed to complete the parenting classes that were required in the new service plan related to the twins. Kincaid testified regarding D.A.'s failure to effectively parent the twins, noting that D.A.: failed to properly clean

the twins, leading to a severe case of diaper rash; fed them from dirty bottles; handled them roughly and failed to properly support their heads; and yelled at them to shut up when they cried. Kincaid and McNeel observed D.A.'s interactions with all of the children during the scheduled visitations and further noted that D.A.: lost her temper and yelled at the children; fed the twins the wrong formula, causing them to become ill; failed to properly attend to the twins when they cried; placed AJ into time out for an entire visit because he pulled toys out to play; and favored one child over the others at different times. Kincaid acknowledged that caring for four children under the age of four could be difficult, but noted, "[W]ell, she had the four children and they are all hers, so we wanted to see if she was able to supervise them because she was asking that they all four be returned to her."

D.A. also did not take full advantage of the regularly scheduled visits with the children. Her visits became sporadic after she tested positive for cocaine in August 2017. At the time of trial, D.A. had not seen the twins in approximately two months.

By failing to comply with the service plan, D.A. also failed to avail herself of the programs that were set in place to assist her.

D. Plans for the Child by the Individuals or by the Agency Seeking Custody and the Stability of the Home or Proposed Placement. The factfinder may compare the parent's and the Department's plans for the child and consider "whether the plans and expectations of each party are realistic or weak and ill-defined." *In re J.D.*, 436 S.W.3d 105, 119-20 (Tex. App.—Houston [14th Dist.] 2014, no pet.). As noted, the goal of

establishing a stable, permanent home for children is a compelling state interest. *Dupree*, 907 S.W.2d at 87.

Kincaid testified that the Department hoped that the twins would be adopted by Mr. and Mrs. T. Mrs. T. testified that she and Mr. T. hoped to adopt the twins, give them a forever home, and see to their health and happiness in the future. Mrs. T. testified that she and her husband love the twins as if they were their own. Mrs. T. further noted that she and her husband will still care for the twins even if they are unable to adopt them. As Kincaid and Mrs. T. noted, without adoption there is no guarantee that the twins will remain with Mr. and Mrs. T.

D.A., on the other hand, expressed no plans for the twins' future, only her own. D.A.'s future plans for the twins were, at best, "weak and ill-defined." *J.D.*, 436 S.W.3d at 120.

E. Acts or Omissions of the Parent that May Indicate the Existing Parent-Child Relationship is not a Proper One and Any Excuse for the Acts or Omissions of the Parent. The evidence of D.A.'s continued drug use and failure to complete the requirements of the service plan indicate that the parent-child relationship with the twins is not a proper one. *See Latham v. Dep't of Family & Protective Servs.*, 177 S.W.3d 341, 349 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (drug abuse and failure to comply with service plan is evidence of improper parent-child relationship). Additionally, D.A. offered no excuses for her treatment of the twins or her chaotic lifestyle.

<div align="center">*Holley Summary*</div>

Viewing all of the evidence in relation to the *Holley* factors in the light most favorable to the jury's findings, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of D.A.'s parental rights was in the twins' best interest. *See J.F.C.*, 96 S.W.3d at 266; *see also Holley*, 544 S.W.2d at 371-72. And viewing the evidence in a neutral light in relation to the *Holley* factors, we hold that the jury could have reasonably formed a firm belief or conviction that termination of D.A.'s parental rights was in the twins' best interest. *See H.R.M.*, 209 S.W.3d at 108; *C.H.*, 89 S.W.3d at 28; *see also Holley*, 544 S.W.2d at 371-72. Accordingly, we thus hold that the evidence is legally and factually sufficient to establish that terminating D.A.'s parental rights is in the twins' best interest. We overrule D.A.'s sole issue and affirm the trial court's order of termination.

<div style="margin-left:40%">REX D. DAVIS<br>Justice</div>

Before Chief Justice Gray,
       Justice Davis, and
       Justice Scoggins
Affirmed
Opinion delivered and filed December 19, 2018
[CV06]

