

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-26-00022-CV

**IN THE INTEREST OF J.J. III** and **D.R.L.J.**, Children

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-00685
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Adrian A. Spears II, Justice
                Velia J. Meza, Justice

Delivered and Filed: June 3, 2026

AFFIRMED

Appellant J.J. II ("Father") appeals the trial court's order terminating his parental rights to his children, J.J. III and D.R.L.J.[1]  The trial court found, by clear and convincing evidence, that Father had engaged in the conduct described by Texas Family Code section 161.001(b)(1)(D), (E), and (N) and that termination of Father's parental rights was in the Children's best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (b)(2).  In three issues, Father argues that the evidence is legally and factually insufficient to support the trial court's findings on the predicate grounds (D) and (E), and best interest.

---

[1] To protect the identities of the minor children in this appeal, we refer to appellant and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(D); TEX. R. APP. P. 9.8(b)(2).

## I. BACKGROUND

In April 2024, the Texas Department of Family and Protective Services (the "Department") initiated the underlying proceeding by filing a petition to terminate the parental rights of Father and D.M. ("Mother"), the biological parents of J.J. III and D.R.L.J. (collectively, the "Children"). Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as the Children's "temporary sole managing conservator." Father signed a family service plan, and it was adopted and incorporated into a court order.

The bench trial commenced in March of 2025, and continued intermittently over six months with five days of trial: March 4, 2025; April 14, 2025; April 29, 2025; May 5, 2025; and September 29, 2025. At the time of trial, J.J. III was two years old, and D.R.L.J. was eleven months old. After the trial, the trial court found by clear and convincing evidence that: (1) Father allowed the Children to remain in a physically or emotionally dangerous condition or surrounding (subsection (1)(D) endangerment by conditions or surroundings); (2) Father engaged in conduct or knowingly placed the Children with persons who engaged in conduct which endangers the physical or emotional well-being of the Children (subsection (1)(E) endangerment by conduct); Father constructively abandoned the children, who had been in the permanent or temporary managing conservatorship of the Department for not less than six months (subsection (1)(N) abandonment); and termination of Father's parental rights is in the best interest of the Children (subsection (2) best interest).

The trial court signed an order that terminated Father's parental rights and appointed the Department as the Children's permanent managing conservator. Father timely appeals.[2]

---

[2] The termination order also terminated the parental rights of Mother. Mother does not appeal, and she is not a party to this appeal.

## II. DISCUSSION

### A. Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

### B. Abandonment

Father does not challenge the (N) finding. TEX. FAM. CODE ANN. § 161.001(b)(1)(N). Accordingly, we must accept the unchallenged finding — that Father abandoned the Children — as true. *See In re A.A.T.*, No. 04-21-00270-CV, 2021 WL 6127926, at *1 (Tex. App.—San Antonio

Dec. 29, 2021, no pet.) (mem. op.) ("When a parent fails to challenge on appeal an independent ground for termination of parental rights, the appellate court accepts the validity of the unchallenged grounds and affirms on that basis without examining the sufficiency of the evidence to support the challenged ground.").

**C. Law on Endangerment**

Subsection 161.001(b)(1)(D) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (E) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id*. § 161.001(b)(1)(E). Endangerment means to expose to loss or injury; to jeopardize. *In re M.C*., 917 S.W.2d 268, 269 (Tex. 1996) (per curiam); *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

"While both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment." *In re N.M.R*., No. 04-22-00032-CV, 2022 WL 3640223, at *3 (Tex. App.—San Antonio Aug. 24, 2022, pet. denied) (mem. op.). "Subsection D concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment." *Id*. (citing *In re J.T.G*., 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)). Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *Id*.

In certain instances, the evidence supporting the trial court's finding of subsection (D) endangerment is intertwined and overlaps with the evidence supporting the trial court's subsection (E) endangerment finding. *In re J.T.G.*, 121 S.W.3d at 131. In such instances, we may consolidate our review of the evidence supporting these findings. *Id.*; *see also In re J.J.V.M.M.*, No. 04-22-00405-CV, 2022 WL 17479144, at *2 (Tex. App.—San Antonio Dec. 7, 2022, no pet.) (mem. op.) (consolidating examination of subsections (D) and (E) findings).

**D. Endangerment Evidence and Analysis**

In Father's first and second issues, he argues that the trial court's endangerment findings are legally and factually insufficient because: (1) his last hair-follicle test was clean, and he completed the drug assessment and drug treatment; (2) he completed therapy; (3) he started a domestic-violence program; (4) he was renting a new apartment that was safe and appropriate for the Children; and (5) he is financially able to care for the Children.

The Department started its investigation because D.R.L.J. tested positive for cocaine and marijuana at birth. Mother tested positive for drugs on the day D.R.L.J. was born, and had multiple positive drug tests during pregnancy. This prompted the Department to ask Father to complete a urine-analysis drug test, which he delayed on multiple occasions. Because of the delay, the Department asked Father to complete a hair-follicle drug test, which he refused. Father testified that he and Mother were using cocaine at the time of D.R.L.J.'s birth. He also admitted to having an alcohol problem and stated that he was currently sober. In all, Father missed eighteen scheduled drug tests, and of the tests he completed, Father tested positive for cocaine and marijuana. "Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child." *In re S.N.,* 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.);

*see also In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. Drug use and its effect on a parent's life and his ability to parent may establish an endangering course of conduct.") (citation omitted).

Further, before the second day of trial, Father failed to submit to a hair-follicle test and lied to the caseworker about having taken the test. His failure to retest supports an inference that he continued to use drugs. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (noting the trial court "could have reasonably inferred that Father's failure to appear for drug testing indicated that he was avoiding testing because he was using drugs."). The continued use of drug use after a child's removal jeopardizes parental rights and may be considered as establishing an endangering course of conduct. *Cervantes–Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253–54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc).

In addition to drug use, the Department was concerned about domestic violence between Father and Mother. Father was arrested for assaulting Mother while she was pregnant. Mother acknowledged the violence, recounting that Father had choked her. Additionally, a loaded gun magazine was found in Father's car, under J.J. III's car seat. "Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied) ("Domestic violence may be considered evidence of endangerment.").

Father testified that he had "been through CPS cases before" with similar allegations, with his four oldest children. "[E]ndangering conduct is not limited to actions directed towards the

child[,]" and it "may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Father's previous CPS case required him to complete a drug-treatment program. The factfinder may have found that Father had not learned anything from that experience and therefore this time would be no different.

Additionally, the family service plan required Father to complete a domestic-violence course, substance-abuse treatment program, and individual counseling to be reunified with the Children. Father did not complete the programs and was repeatedly discharged from his domestic-violence course, despite it being switched to virtual classes to make it easier for him to comply. A parent's failure to complete a service plan may be considered as part of the endangerment analysis. *In re M.B.*, No. 02-15-00128-CV, 2015 WL 4380868, at *12 (Tex. App.—Fort Worth Jul. 16, 2015, no pet.) (mem. op.); *In re T.H.*, No. 07-07-00391-CV, 2008 WL 3351948, at *7–8 (Tex. App.—Amarillo Aug. 12, 2008, no pet.) (mem. op.).

To Father's credit, during the course of the trial, which lasted approximately six months, he obtained a new residence and began to show more engagement in completing services than he had in the past, and he completed psychological and parenting classes. However, Father's recent attempts were inconsistent. "[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *In re J.O.A.*, 283 S.W.3d at 340.

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder is the sole arbiter of the witnesses' credibility and demeanor, we conclude a reasonable factfinder could have formed a firm belief or conviction that Father "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings

which endanger the physical or emotional well-being of the child[ren]" and "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Thus, the evidence is legally sufficient to support this finding. Further, after considering the entire record, including any disputed or contrary evidence, we conclude the evidence is factually sufficient to support the trial court's termination under subsections (D) and (E) of the Texas Family Code.

Therefore, Father's first and second issues are overruled.

**E. Law on Best Interest**

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id.* at 372; *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.). These factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 372

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Family Code. *Id*. § 263.307(b). Additionally, evidence that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.— San Antonio 2013, pet. denied). Additionally, a factfinder may measure a parent's future conduct by his past conduct in determining whether termination of parental rights is in the child's best interest. *Id*. In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

### F. Best Interest Evidence and Analysis

In Father's third issue, he argues that the evidence is legally and factually insufficient to support the trial court's finding that terminating his parental rights is in the Children's best interest because: (1) "there was not any testimony or evidence which showed that [he] had inappropriate visits with the children;" (2) there was testimony that he and the children were bonded; and (3) there is "no evidence [he] is unable or unwilling to meet the child's physical and emotional needs or provide the child[ren] with a safe and stable home."

There is no evidence of negative interactions or resistance between the Children and Father during parent-child visits. Father never progressed beyond supervised one-hour visits; he was consistently late to visits (including home visits), left in the middle of visits, and missed a visit. While the Children were too young to convey their wishes, they are well bonded with their foster parents and call them "mom" and "dad." D.R.L.J. has spent all but one month of her life with the foster family. This bond supports the trial court's best interest finding regarding the child's desires (the first *Holley* factor). *See In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied) (op. on reh'g) (quoting *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.)) ("When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent."). Additionally, the foster parents wish to adopt the Children. *In re C.H.*, 89 S.W.3d at 28 ("Evidence about placement plans and adoption are, of course, relevant to best interest.").

The evidence showed that D.R.L.J. was born with drugs in her system. As such, Father was required to engage in and complete substance abuse treatment in order to be reunified with the Children. Yet despite the requirement of drug testing, Father failed to submit to testing on several occasions. Father's drug use is relevant to multiple *Holley* factors, including the Children's emotional and physical needs now and in the future (the second factor), the emotional and physical danger to the Children now and in the future (the third factor), Father's parental abilities (the fourth factor), the stability of Father's home (the seventh factor), and the acts or omissions which may indicate an improper parent-child relationship (the eighth factor). *See Holley*, 544 S.W.2d at 371–72. "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *In re A.M.L.*, 2019 WL 6719028, at *4 (citing *In re E.R.W.*, 528

S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.)); *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports a finding that termination is in best interest of the child).

Father's history of domestic violence further supports the trial court's best interest finding. *See In re R.J.*, 579 S.W.3d 97, 116 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) ("Evidence of domestic violence in the home is supportive of a trial court's best interest finding under the third, fourth, and seventh *Holley* factors: the emotional and physical danger to the child now and in the future, parental abilities, and stability of the home.").

Viewing all of the evidence in the light most favorable to the best interest finding and applying the *Holley* factors, we conclude that the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in the Children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. We further conclude that any disputed evidence, viewed in the light of the entire record, could have been reconciled in favor of the trial court's best interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in the Children's best interest. *See id.* Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

We therefore overrule Father's third issue.

### III. CONCLUSION

We affirm the trial court's parental termination order.

Rebeca C. Martinez, Chief Justice